EDWARD WARD v. JOHN T. NOLDE and JOHN
    O'F. DELANY; JOHN O'F. DELANY, Appel-
    lant.

### Division Two, June 23, 1914.

1. MECHANICS' LIEN: "Owner:" "Immediate Use and Enjoy-
ment." The phrase "for whose immediate use, enjoyment or
benefit any building, erection or improvement shall be made,"
as used in the mechanics' lien statutes of Missouri, does not
limit the word "owner" as used in the same statutes, but is
used rather to include persons who would not be considered
owners in the ordinary acceptance of that term.

2. ———: ———: "Agent." An "agent," as the word is used
in the mechanics' lien act, may be a person with such limited
authority as to be unable to bind his principal personally for
the work, but who at the same time by an exercise of his
limited authority will transmit to the person doing the work
or furnishing the materials a right to a lien on the owner's
premises.

3. ———: Landlord and Tenant: Tenant Obligated to Make
Improvements. A tenant, as such, is not the agent of the
owner so as to establish a lien against the land of the owner
for improvements made by the tenant, but whenever the land-
lord binds or obligates the tenant to construct permanent and
substantial improvements beneficial to the reversionary interest,
the person furnishing any part of the material or work for
said specified improvements under or by virtue of a contract
with said tenant has the right to a mechanic's lien against
the reversionary interest of the landlord in the land improved.

4. ———: ———: ———: This Case. The owner of real
estate bound his lessee to make certain improvements not
only by covenant in the lease but also by providing that the
lessee should give a $20,000 bond that the covenant be per-
formed. The lease contract also provided that the work should
be done according to plans and specifications to be approved
by the owner, and that the work should begin within ten
days from the beginning of the term. Plans and specifications
were prepared by the lessee and agreed to by the owner. The
improvements were such as to be of substantial benefit to the
owner's interest, and the lease further provided that if the
lessee should fail to comply with the covenant for improve-
ments or fail to pay the rent, the lease should be forfeited
and the improvements become the property of the owner. There

Ward v. Nolde.

was a further provision that the lessee should execute a bond for $40,000 to hold the owner harmless from all damages resulting from the improvement work and also to protect him against liens. *Held*, that such facts were sufficient to justify the trial court in finding that the lessee was the agent of the owner within the meaning of Sec. 8212, R. S. 1909, and that the owner's interest was properly subjected to a mechanic's lien for the improvements covered by the plans and specifications agreed to.

5. ———: ———: **Acquiescence in Tenant's Making Improvements.** The fact that the owner may have consented to, or acquiesced in, the making of improvements by his tenant does not constitute the tenant his agent within the meaning of the mechanics' lien act.

6. ———: ———: **Estoppel: Assignment to Landlord of Contractor's Bond to Tenant.** A contract of lease which obligated the lessee to make improvements, provided that the lessee should execute a bond for $40,000 to indemnify the lessor against any damages arising out of said improvement work and from liens. This bond was never executed, but before work was begun the contractor executed and delivered a $40,000 bond to the lessee, one of the provisions of which was that the contractor should save the lessee harmless "against costs, liens, claims and damages" arising out of said construction work, and the lessee, with the contractor's consent, assigned the said bond to the lessor. *Held*, that the contractor's consent to the assignment of his bond did not operate as an estoppel or bar to his right to establish his mechanic's lien against the interest of the lessor.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

Affirmed (*conditionally*).

*T. K. Skinker* for appellant.

(1) The court erred in adjudging a lien against the fee simple estate of defendant Delany. The plaintiff's contract having been made with a lessee, his remedy is against the lessee only. R. S. 1909, sec. 8216; Rothe v. Bellingrath, 71 Ala. 55; Deatherage v. Sheidley, 50 Mo. App. 496; Koenig v. Mueller, 39 Mo. 165; Pinkerton v. LeBeau, 3 S. D. 440. (2) The court

erred in holding that Nolde was agent of Delany within the meaning of section 8212 and that the work was done for the immediate use, enjoyment and benefit of Delany, so as to make his reversionary interest in the premises liable to a lien. R. S. 1909, secs. 8212, 8234; Winslow v. Stone Co., 169 Mo. 244; Marble & Granite Co. v. Handlan, 85 Mo. App. 313; Wilson v. Lubke, 176 Mo. 210; 20 Am. & Eng. Ency. Law (2 Ed.), 319; Albaugh v. Decorating Co., 14 App. Cas. (D. C.) 113; Lumber Co. v. Morris, 170 Mo. App. 212; Francis v. Sayles, 101 Mass. 435; Block v. Murray, 12 Mont. 545; Cornell v. Barney, 94 N. Y. 394; Morrow v. Merritt, 16 Utah, 410; Conant v. Brackett, 112 Mass. 18; Reed v. Estes, 113 Tenn. 200; Beehler v. Ijams, 72 Md. 193; Weathers v. Cox, 159 N. C. 575; Poole v. Fellows, 25 R. I. 64; Gates v. Fredericks, 5 Ariz. 343; Steuberg v. Lienneman, 20 Mont. 457; Meek v. Parker, 63 Ark. 372; Moore v. Vaughn, 42 Neb. 696; Plumbing Co. v. Irwin, 77 Neb. 385; Schrage v. Miller, 44 Neb. 818; Johnson v. Dewey, 36 Cal. 623; Waterman v. Stout, 38 Neb. 396; Boisot on Mechanics Liens, sec. 289, note 135, sec. 291; Pelton v. Construction Co., 11 Mont. 281; Lumber Co. v. Nelson, 71 Mo. App. 110; Hardware Co. v. Churchill, 126 Mo. App. 462; Lumber Co. v. Churchill, 114 Mo. App. 578; McGuinn v. Mines Co., 160 Mo. App. 28; Seaman v. Paddock, 51 Mo. App. 465; Kline v. Perry, 51 Mo. App. 422; Marble Co. v. Bauman, 44 Mo. App. 392; VanRiper v. Martin, 61 Mo. App. 440; Otis v. Dodd, 90 N. Y. 336; Burkett v. Harper, 79 N. Y. 273; Knapp v. Brown, 45 N. Y. 207; Muldoon v. Pitt, 54 N. Y. 269; Deardorff v. Eberhartt, 70 Mo. 37. (3) The court erred in awarding plaintiff a lien against the fee simple interest of Delany for extra work, because Delany did not authorize it to be done, either by the lease or otherwise. (4) Ward knew when he made his contract with Nolde that the lease contemplated that the alterations should be made at Nolde's expense and without liability on the part

of Delany on his land. The court erred in refusing to hold that this barred Ward of any right to enforce a lien. Mills v. Matthews, 7 Md. 315; Waterman v. Stout, 38 Neb. 396; Schroeder v. Galland, 134 Pa. 237; Boisot on Mechanics Liens, sec. 133; Williams v. Vanderbilt, 145 Ill. 238; McClintock v. Criswell, 67 Pa. 183; Taylor v. Murphy, 148 Pa. 337; Given v. Church, 15 Phila. 300. (5) Ward signed a bond for $40,000 to protect against liens, and this bond by his consent was assigned to Delany. The court erred in refusing to hold that this also is a bar to a claim by Ward for mechanic's lien. Wilson v. Davidson Co., 310 Tenn. Chan. 536; Gray v. Jones, 47 Ore. 40; Fidelity Assn. v. Jackson, 163 Pa. 208; Handley v. Ward, 70 Mo. App. 146; Lumber Co. v. Stoddard Co., 141 Mo. App. 15; Spears v. Lawrence, 10 Wash. 368; Pinning v. Skipper, 71 Md. 347; Gannon v. Church, 173 Pa. 242; Commonwealth Co. v. Ellis, 192 Pa. 321; Haine v. Dambach, 4 Pa. Co. Ct. 633; Benedict v. Hood, 134 Pa. 289; Closson v. Billman, 161 Ind. 610; McHenry v. Knickerbocker, 128 Ind. 77; Miller v. Taggart, 36 Ind. App. 595; Aikens v. Frank, 21 Mont. 192. (6) The court erred in refusing to reform the $40,000 bond assigned by Nolde to Delany, and in refusing to enter judgment in favor of Delany and against Ward on this bond. Lumber Co. v. Clark, 172 Mo. 588; Lumber Co. v. Gates, 89 Mo. App. 201.

*M. C. Early* and *Edw. C. Kehr* for respondent.

(1) The mechanic's lien law is purely statutory. The doctrine is fundamental in this State that it is highly remedial in its nature and should be liberally construed to give effect to its beneficent purposes. DeWard v. Smith, 63 Mo. 263; Dugan Co. v. Gray, 114 Mo. 497; Sash & Door Works v. Shade, 137 Mo. App. 23. (2) By the lease and facts in evidence appellant Delany's interest in the premises is charged

with Ward's lien. The building was remodeled and reconstructed through Nolde for the immediate use, enjoyment and benefit of Delany. R. S. 1909, secs. 8212, 8214, 8216 and 8234; Winslow Bros. Co. v. Stone Co., 169 Mo. 236; O'Leary v. Roe, 45 Mo. App. 567; Lumber Co. v. Nelson & Haydel, 71 Mo. App. 110; Dougherty Co. v. Churchill, 114 Mo. App. 578; Hardware Co. v. Churchill, 126 Mo. App. 462; Lumber Co. v. Harris, 131 Mo. App. 94; McQuinn v. Federated M. & M. Co., 160 Mo. App. 28; Lumber Co. v. Morris, 170 Mo. App. 212; Lumber Co. v. Jones, 187 Ill. 203; Crandell v. Sorg, 198 Ill. 62; Harte v. Shukert, 142 N. W. 517. (3) The report of the referee is equivalent to a special verdict and where there is evidence to establish the facts and the referees' findings have been approved and confirmed by the circuit court, they will not be disturbed. Ferry Co. v. Railroad, 73 Mo. 389; Berthold v. O'Hara, 121 Mo. 97; Bank v. Donnell, 172 Mo. 402; State ex rel. v. Guaranty Co., 236 Mo. 375. (4) The items called extra work by appellant Delany are part of the improvements which the lease required Nolde to make. They were ordered by Nolde and Matthews, the architect, and were approved by both of them. They are included in the stipulation of the parties fixing the items and amount of Ward's demand. The referee found that they are properly a part of respondent's lien claim. (5) Under the law of this State Ward has a lien for work done and material furnished for Delany's house under Nolde's lease. The fact that Ward knew that Nolde, as between himself and Delany, was to pay for the improvements cannot bar him from enforcing his lien. The authorities cited under point 2 of this brief show that he has such right. (6) The $40,000 bond given to Nolde to protect him against the result of accidents, in the course of the reconstruction of the building, is limited to liens growing out of such accidents. The bond in

nowise bars Ward from enforcing his lien against the building. The lien is given by law and cannot be considered waived unless the intention to waive is clearly manifested. Lee v. Hassett, 39 Mo. App. 71; Lumber Co. v. Hoose, 67 Mo. App. 274; Nice v. Walker, 153 Pa. St. 123; Evans v. Grogan, 153 Pa. St. 121; Iron Works v. O'Brien, 157 Pa. St. 174.

WILLIAMS, C.—This is a suit to establish a mechanic's lien against a certain tract of ground and building, located at the southwest corner of Tenth and Locust streets, in the city of St. Louis, Missouri. Appellant Delany is the fee simple owner of the real estate sought to be subjected to the mechanic's lien. In 1907, appellant Delany executed to defendant Nolde a twenty year lease on the five-story brick building located on said premises and provided in said lease that Nolde should make and construct certain substantial alterations and improvements in said building. That portion of the lease applicable to the issues here was as follows:

"Said party of the second part agrees to pay as rental therefor, for a term of 20 years, to commence on the first day of January, 1908, the sum of $20,000 net per year for the first ten years and $24,000 net per year for the remaining ten years of said term, payable in gold coin of the United States of America of the present standard of weight and fineness, or at the option of the lessor, its equivalent, in equal quarterly installments in advance on the first day of January, April, July and October, of each and every year during said term of 20 years. As additional rent for said premises, the lessee is to pay all taxes both general and special, for the year 1908 and thereafter, which may be levied, assessed or imposed against said property during the term of this lease. Lessee shall and will deliver to lessor his bond to the amount of $20,000 in the Banker's Surety Company, of Cleveland, Ohio,

to be held by lessor as security to guarantee to said lessor a performance by said lessee of all the covenants and conditions herein contained, to remain until the alterations, additions and all changes in first floor and all other parts of building shall be completed, and that the sum of $20,000 shall be expended for such alterations, additions, and changes to the satisfaction of the party of the first part; and said lessee, not being in default in performance of any of the conditions and covenants of this lease, said bond shall be returned to said lessee. In case said Banker's Surety Company should fail or go out of business for any reason, the lessee shall furnish an additional bond to take place of said Banker's Surety Company bond, and said bond shall be satisfactory to lessor, and additional bond shall be furnished lessor for the amount above agreed upon. Lessee shall submit plans, drawings and specifications for alterations, additions and changes in building to lessor, for his approval, on or before January 1, 1908, and said alterations, additions and changes, must be satisfactory to lessor. Lessee shall, within ten days from the first day of January, 1908, begin and continue the alterations, additions and changes, in said building, until it is complete, and the sum of $20,000 is expended and paid out for said work.

"On or before January 1, 1908, and before commencing removal of stone, brick and steel columns, now supporting building on first floor, for the purpose of putting in new steel columns in place of columns now supporting building, lessee shall and will deliver to lessor his bond to the amount of $40,000, or bonds in such sum and with such security or securities as may be satisfactory to and approved by lessor, conditioned to hold lessor harmless against damage or loss of any kind whatsoever arising out of the removal of said columns in building, and the construction of all alterations and putting in new columns, as well as against costs, liens, claims, and demands of whatso-

ever kind and nature arising out of such removal of parts of building, and the construction of new parts of building. Any failure to pay each quarterly advance rent when due, and all taxes, insurance, and the fulfillment of all other covenants and conditions herein contained and agreed by lessee shall produce a forfeiture of this lease, if so determined by lessor or his successors.''

The lease further provided:

''All alterations, additions and changes made on building by lessee shall be a part of the building and shall revert to the lessor at the expiration of this lease. Said lessee further covenants and agrees, at the termination of this lease, by limitation or forfeiture, to quit, surrender and deliver up to the lessor possession of the building and premises with all improvements thereon, all of which shall be and remain the property of the lessor.''

Pursuant to the provisions of said lease contract, Nolde procured to be made the plans and specifications covering said alterations and changes and entered into a contract with plaintiff Ward by which plaintiff agreed to furnish the labor and material for said alterations and changes. Said lease was duly recorded and plaintiff read the same and was fully acquainted with its provisions prior to entering into the contract with Nolde to do said improvement work. Defendant Nolde went into possession of said building under said lease on January 1, 1908, and a day or two later plaintiff began the work of making the alterations and changes, under his contract. After the work had progressed a few days, it was discovered that, by reason of the way the building was originally constructed, one or two changes would have to be made in the plans and specifications, and supplemental plans and specifications were made relative thereto. Both the original plans and specifications for the alterations and changes and also the supplemental plans and

specifications above mentioned were shown to appellant Delany before the construction work was begun, and, as provided by the lease contract, Delany approved the plans and specifications and endorsed his approval thereon by signing his name on each page of said plans and specifications. The construction work provided for by the said original and supplemental plans and specifications was fully completed by plaintiff and the evidence shows that the reasonable value of the work called for in said plans and specifications was $22,975.31. During the progress of the work, defendant Nolde, the tenant, desired to have alterations and improvements placed in the building in addition to those provided for in the plans and specifications and contracted with the plaintiff for the furnishing of said extra improvements. The total cost of construction work done by plaintiff amounted to $30,284.08. Deducting the above amount of $22,975.31, the total cost of the work called for by original and supplemental plans and specifications, from the sum of $30,284.08, the cost of total work done, we find that the cost of the extras amounted to $7308.77. Of the extra items, the most important was a sprinkler system costing $5286.50. There is some evidence to the effect that appellant Delany was told by defendant Nolde that he (Nolde) was going to install the sprinkler system in the building and that in reply to this, Delany said: "It would be a splendid thing." Plaintiff completed the construction work about June 9, 1908. A day or two later the building was inspected by Nolde's architect and by appellant Delany and at this time plaintiff delivered the keys of the building to Nolde's architect. The lease provided that Nolde should pay the rent in advance in quarterly installments. He paid the first installment of rent amounting to five thousand dollars in January, 1908, but defaulted in the payment of the April installment of rent. Defendant Nolde failed to pay the plaintiff con-

tractor any part of the amount due the plaintiff for
the construction work. It appears from the evidence
that defendant Nolde was, during this time, making
diligent efforts to finance the leasehold estate and the
construction work, but that, partly by reason of the
money stringency occurring in 1907 and for other rea-
sons, he was unable to raise the necessary funds; but
up until some time in May he continued to reassure
the plaintiff that he would soon have the money for
him and to assure appellant Delany that he would
soon have the money raised with which to pay the
rent. Defendant Nolde failed to make good his prom-
ises, and on May 30, 1908, under and by virtue of the
terms of the lease contract, appellant Delany served
forfeiture notice upon defendant Nolde stating that
he had declared the lease forfeited by reason of Nolde's
failure to comply with the covenants of the lease as
to paying for the alterations and changes and the pay-
ment of the rent. Upon receipt of the forfeiture no-
tice, defendant Nolde relinquished all rights under said
lease and yielded peaceable possession of the premises
to Delany.

Before entering into the possssion of the building
defendant Nolde executed to appellant Delany the
$20,000 bond called for in the lease contract to guar-
antee the making of the alterations and changes, but
Nolde failed to execute to Delany the $40,000 bond, as
provided by the lease contract, to protect Delany from
damages, liens, etc. The plaintiff contractor had exe-
cuted to defendant Nolde a $40,000 bond to protect
Nolde from all damages and liens, and it appears from
the evidence that instead of Nolde executing a $40,000
bond to Delany, as required by the lease contract,
he simply assigned to Delany all of Nolde's right,
title and interest in and to the bond executed by
plaintiff Ward to Nolde. This assignment was con-
sented to, in writing, by plaintiff Ward. The evidence
shows that plaintiff has never been paid for doing

any of the construction work. The mechanic's lien was duly filed and it is conceded by appellant that all of the labor and material mentioned in the mechanic's lien went into this building and that the price claimed is reasonable. By this suit, plaintiff seeks to establish a mechanic's lien for the total sum of $30,284.08 and interest, both against the leasehold interest of defendant Nolde and the fee simple estate of appellant Delany and also asks for personal judgment for that amount against defendant Nolde. Trial was had in the circuit court of the city of St. Louis. A referee was appointed to hear the testimony and make findings. The referee's report and findings cover about forty printed pages and it is unnecessary that the same be set out in full here. With reference to the work and labor furnished by plaintiff in doing the work provided for by the plans and specifications, the referee found that "defendant Nolde was within the contemplation of the lien law so far the agent of defendant Delany to procure the repairs, changes, alterations and improvements to be made as to entitle plaintiff to a lien against the fee," and that the said work was done "for the immediate benefit of defendant Delany." With reference to the extras above mentioned, the referee found that they were made with the architect's approval and under contract with defendant Nolde, and that they "were made and installed with the *acquiescence* of defendant Delany and for his immediate benefit and use." The conclusion reached by the referee, as approved by the circuit court in the judgment rendered, was that plaintiff recover a personal judgment against defendant Nolde in the sum of $34,151.34, being the amount due for the work plus six per cent interest from the 9th day of June, 1908, and that plaintiff have a lien for that amount upon the interest and estate of both defendant Nolde and defendant Delany in the building and ground above mentioned. Defendant Delany alone appealed. Additional facts neces-

sary to a complete understanding of the legal questions involved will be stated in the opinion.

I.   Appellant contends that "the court erred in holding that Nolde was agent of Delany within the meaning of section 8212, Revised Statutes 1909, and that the work was done for the immediate use, enjoyment or benefit of Delany so as to make his reversionary interest in the premises liable to a lien."

Mechanics' Lien.

In support of this contention, appellant cites a number of authorities, mostly from other States. Upon a careful reading of these authorities and the respective statutes of the different States cited, we find that the statutes of the different States and also the basic facts upon which the respective decisions turn are in most instances so different from the Missouri mechanics' lien laws and the facts involved in the present case as to furnish little, if any, aid in arriving at a correct solution of the question here involved.

Section 8212, Revised Statutes 1909, provides: "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for, any building, erection or improvements upon land, or for repairing the same, *under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor,* upon complying with the provisions of this article, shall have for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre;" etc.

Section 8214, Revised Statutes 1909, provides: "The entire land, to the extent aforesaid,  .  .  . shall be subject to all liens created by this article, to the extent, and only to the extent, of all the right.

title and interest owned therein by the owner or proprietor of such building, erection or improvement, and for whose immediate use or benefit the labor was done or the things furnished.''

Section 8234, Revised Statutes 1909, provides: ''Every person, including all *cestui que trust,* for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made, *shall be included* by the words 'owner or proprietor' thereof under this article,'' etc.

The result in this case will depend largely upon the construction to be given to the word ''agent'' in the above statute. Under the present facts, we encounter no difficulty in the meaning of the word ''owner.'' The phrase ''for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made'' is not intended as a limitation upon the person who is an ''owner'' as that word is ordinarily understood, but the phrase is undoubtedly used to include persons who would not be considered owners in the ordinary acceptance of that term. In other words, the use of the phrase in the statute is for the purpose of enlarging rather than that of limiting the ordinary definition of the word ''owner.'' This is apparent from the use of the phrase ''shall be included by the words owner,'' etc., in section 8234, supra. Delany owned the building and fee and is an ''owner'' under the meaning of the statute whether the improvement was made for his immediate benefit or not. While it is therefore unnecessary that the improvement should have been made for Delany's immediate use or benefit in order to constitute him an ''owner'' within the meaning of the statute, yet, if the facts disclose that the improvements made were for his immediate use or benefit it would no doubt have an important bearing upon the case as throwing some light upon the character of the relationship be-

*Margin note:* Owner: Agent: Immediate Use and Enjoyment.

tween Delany and Nolde, and would therefore be a circumstance that should be taken into consideration in determining whether Nolde was his agent within the meaning of the statute. Appellant insists that the "agent" mentioned in the statute must be a person whose agency is sufficient in its scope to bind the owner *personally* for the price of the labor or materials furnished. We are unable to agree with this contention. The purpose of the mechanics' lien act is not to create a *personal* indebtedness not otherwise existing, but its *sole* purpose is to provide a lien under the conditions enumerated. If the facts in any case would show that the alleged agent in fact had the power to bind the owner *personally* for the cost of the work, then there would, of course, be little doubt but that the lien right would follow, for such a situation would be little different from that in which the owner contracted direct with the person furnishing the work and material. However, we do not think a fair interpretation of the act to be that the agency therein mentioned should be that wide in its scope before the lien is created. For, if that be the meaning of the act then the word "agent" might well be treated as surplusage and discarded because an act done with a fully authorized agent is the same in law as an act done with the principal. We, therefore, conclude that the "agent" mentioned in the statute may be a person with such limited authority as to be unable to bind his principal personally for the work, but who at the same time by an exercise of the limited authority given will transmit to the person furnishing the materials a right to a lien upon the owner's premises. Such a relationship is very similar to the agency of the contractor who contracts direct with the owner to do the work. The contractor has not the power to let subcontracts so as to bind the owner personally to pay the subcontractors, yet he has such authority of agency as when exercised will give to the materialman or subcontractor

the right to a lien on the owner's realty, for the reasonable value of the labor and material used, provided the labor and material be such as are contemplated by the contract. In the case of O'Neil Lumber Company v. Greffet, 154 Mo. App. 33, l. c. 37, it was properly said: "For though the original contractor is not the agent of the owner so as to bind him in all respects, as decided in Deardorff v. Everhartt, 74 Mo. 37, 39, there can be no doubt that the principle upon which he may obligate the property of the owner to the extent of the market value of materials is that of an implied agency of the owner for that purpose."

It is true that a tenant, as such, is not the agent of the owner so as to establish a lien against the land of the owner for improvements made by the tenant. [McGuinn v. Federated Mines & Milling Company, 160 Mo. App. 28, l. c. 32.] Yet, on the other hand, this does not mean that a person by reason of being the tenant cannot be given the authority of agent to the extent of being able to bind the landlord's property with a lien under any circumstances. The agency does not spring from the relationship of landlord and tenant, but it may spring from another source, to-wit—any act or contract upon the part of the landlord which amounts to the establishment of the power of agent in the tenant. The statute here under discussion has, many times, been before the courts of appeal of this State for interpretation and construction and it has been uniformly held that whenever the landlord binds or obligates the tenant to build or construct permanent and substantial improvements beneficial to the reversionary interest of the landlord, the person furnishing any part of the material or work for said specified improvements under or by virtue of a contract with said tenant has the right to a mechanic's lien against the reversionary interest of the landlord in the land im-

proved—this, on the theory that the tenant, under such circumstances, becomes an agent of the owner within the contemplation of the mechanics' lien statutes. [Lumber Company v. Nelson, 71 Mo. App. 110; Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578; Curtin-Clark Hardware Company v. Churchill, 126 Mo. App. 462; McGuinn v. Federated Mines and Milling Company, 160 Mo. App. 28; Marty v. Hippodrome Amusement Company, 173 Mo. App. 707.]

In the case of Curtin-Clark Hardware Company v. Churchill, supra, the Kansas City Court of Appeals, speaking through JOHNSON, J., correctly announces the rule, here applicable, as follows: "It may be considered as settled that when the lessor contracts with his lessee for the making of improvements of substantial benefit to the estate of the former, materialmen and workmen who furnish material and labor in construction of the improvements are entitled to liens for their unpaid accounts which may be enforced against the estates of lessor and lessee. . . . In cases where the lessor, either in the lease or otherwise, does nothing more than consent that the lessee at the latter's option may make alterations or improvements in the premises for his own benefit and at his own cost, such consent imposes no obligation on the lessee to make the improvements and in the absence of such obligation, the lessor cannot be said to have contracted for them, and his reversionary estate will not be held subject to liens for the material and labor which enter into the improvements. But where, as in this case, no option is given the lessee, but he is compelled by his contract with the lessor to make certain alterations or forfeit his leasehold, the work should be regarded as being done under a contract with the lessor and the relationship thus established between the parties with respect to the improvement is analogous to that of owner and contractor and no reason can be perceived for saying that the unpaid accounts for ma-

terial and work furnished under contract with the lessee should be denied the security of a lien against the estate of the lessor under the provisions of the mechanics' lien law.''

In the case of McGuinn v. Federated Mines and Milling Company, the Springfield Court of Appeals, speaking through GRAY, J., very tersely states the rule, as follows: ''On the other hand, the rule is very generally recognized and established that where the landlord binds the tenant to make substantial improvements upon the property, that he thereby constitutes the latter his agent within the meaning of the mechanics' lien law, and his property is subject to the lien for labor performed and material furnished in making such improvements under the contract with the tenant.'' (Citing authorities.)

In the present case, Delany bound Nolde to make said improvements not only by covenant in the lease contract but also by providing that Nolde should give a $20,000 bond that the said covenant be performed. This bond was executed. The lease contract also provided that the work should be done according to plans and specifications to be approved by Delany, and that said construction work should be begun within ten days from the date of the commencement of the leasehold term. Plans and specifications providing for the work were prepared by Nolde and agreed to by Delany. The improvements which Nolde was thus bound to make were of a substantial nature and such as to be of substantial benefit to the interest of Delany in the premises. The lease further provided that if Nolde should fail to comply with the covenant as to the improvements or should fail to pay the stipulated rent, Delany could forfeit the lease, and upon forfeiture or termination of the lease the improvements should become the property of Delany. The lease further provided that Nolde should execute to Delany a bond in the sum of $40,000 to hold said De-

lany harmless from all damages resulting from the improvement work and also to protect Delany against "*liens.*" Applying the rule above announced, we find that the above facts were sufficient to justify the trial court in finding that Nolde was the agent of Delany within the meaning of section 8212, supra, and that the interest of Delany in said real estate was properly subjected to the mechanic's lien, at least to the extent of the reasonable price of the labor and materials used in doing the work called for by the above-mentioned original and supplemental plans and specifications.

II. It is further contended that "the court erred

**Acquiescence in Improvements by Tenant.**
in awarding plaintiff a lien against the fee simple interest of Delany for *extra work* because Delany did not authorize it to be done either by the lease or otherwise."

The "extra work" to which reference is here made, as mentioned in the foregoing statement of facts, amounted to $7308.37. Of these extras, none were mentioned in or provided for by the plans and specifications which were endorsed or agreed to by Delany. In fact, after a careful review of the evidence, it appears very doubtful if Delany even knew some of the extras were to be in the building until they were in fact placed therein. Plaintiff does not claim that Delany authorized him to place the extras in the building. The extent of the evidence as against Delany on this point has reference to the largest item of the extra list, e. g., the sprinkler system. As to this item, plaintiff's evidence tends to show that when Nolde told Delany that he contemplated placing a sprinkler system in the building, Delany replied: "It would be a splendid thing." Delany testified that he knew of none of the extras until they were practically installed. With reference to these extras, the referee found that they "were made and installed with the *acquiescence* of defendant Delany and for his immediate benefit and

use.'' Measured by the rule announced in the preceding paragraph of this opinion, this was not a sufficient showing to constitute the tenant Nolde the agent of Delany so as to subject Delany's land to a lien for such extras. These extras were ordered by Nolde and his architect of their own initiative and without authority so to do from Delany. The architect did not act as the representative of Delany. Plaintiff, before beginning the work, read the lease contract and says he was familiar with its terms and by reason of its terms he considered he would have a lien right against the fee for the improvements made. He also had notice from the lease contract that the improvements authorized were limited to those to be provided for by plans and specifications to be approved by Delany. The evidence does not show that Delany did anything to waive this provision in the lease contract.

The fact that the owner may have consented to the making of improvements by the tenant does not constitute the tenant his agent within the meaning of the mechanics' lien statute. [Winslow Brothers Co. v. McCully Stone Mason Co., 169 Mo. 236, 1. c. 244.]

It follows that Nolde had no authority to involve the land of Delany in a lien for the amount of the extras furnished under the conditions here disclosed and that therefore the cost of said extras with interest thereon was erroneously included in said judgment lien against the property of Delany. The value of said extras, as above stated, was $7308.77, and the interest thereon from June 9, 1908, to the date of the judgment at six per cent per annum amounts to $934.29; therefore, said judgment lien as against defendant Delany was excessive to the amount of $8243.06.

III. The lease contract between Delany and Nolde provided that, on or before commencing said improve-

**Estoppel: Assignment of Bond.**

ment work, Nolde should execute and deliver to Delany a $40,000 bond to hold said Delany harmless from any damages arising out of said improvement work and from liens, etc. This bond was never executed. But before the work was begun, plaintiff contractor executed and delivered to defendant Nolde a bond in the penal sum of $40,000. One of the conditions of this bond was that plaintiff Ward should "protect and save harmless" said Nolde "against costs, liens, claims and damages of whatsoever kind and nature arising out of" said construction work. Before the work was begun, defendant Nolde delivered the above-mentioned bond of Ward's to Delany with the following assignment endorsed thereon: "The interest of John T. Nolde as lessee, covered by this bond, is hereby assigned to John O'F. Delany, owner, subject to the consent of the Banker's Surety Company. (Signed) John T. Nolde, St. Louis, December 23, 1907." The written consent of the surety and principal, Ward, to said assignment were also endorsed thereon.

In his answer, appellant alleged that "the execution and assignment of said bond to this defendant by the consent of plaintiff operates as an estoppel against the plaintiff from claiming any lien upon defendant's property, and further that if plaintiff's lien be established against his interest in said land that the same "would instantly constitute a breach" of said bond in which event defendant is entitled to judgment on said bond and that the same be "allowed as a set-off against any claim that may be so established and allowed as a lien against defendant's said premises." The trial court found against defendant on this issue and the same is assigned as error. The condition of the bond is that Ward shall hold harmless the obligee, Nolde, from damage by liens, etc. Correctly interpreted this means that should Nolde pay Ward the contract price, the bond would protect Nolde from liens that

might be filed by materialmen or subcontractors under Ward. [Hartman v. Berry, 56 Mo. 487; Fullerton Lumber Company v. Gates, 89 Mo. App. 201; Badger Lumber Co. v. Muehlebach, 109 Mo. App. 646.] Nolde failed to pay Ward for said construction work, therefore, the fact that Ward establishes a lien against Nolde's interest in said property would not constitute a breach of said bond. The above assignment of said bond in no manner undertook to enlarge the conditions thereof, or to change the obligee therein. It is not necessary to determine what rights accrued to Delany from said assignment but it is sufficient for the purposes of this review to say that the assignment bond does not undertake to protect or hold harmless the assignee against any lien that might be filed against his interest in said premises. That being true, the consent by Ward to the assignment of the bond cannot operate as an estoppel or bar to Ward's right to establish his lien against the interest of Delany. The ruling of the trial court in disallowing this defense was proper.

IV. It appears from paragraph II above that the judgment lien allowed against the property of appelland Delany is excessive to the extent of $8243.06.

It is therefore ordered that if, within ten days, plaintiff will enter a remittitur for $8243.06 of the amount of said judgment lien against the property of appellant, the judgment giving a lien to the amount of $25,908.28 against the said property of Delany will be affirmed, otherwise the cause will be reversed and remanded. *Roy, C.*, concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.