A. A. COMPTON, Appellant, v. CLARENCE CON-
RAD, et al., Respondents.

Springfield Court of Appeals, Feb. 25, 1919.

1. MECHANIC'S LIENS: Parties to Indemnity Bond: Who May Assert. A contractor who it a surety on a bond to a mortgagee, holding it harmless against the filing of mechanics' liens, cannot enforce a mechanic's lien as against such mortgagee, who has paid the proceeds of the mortgage to the mortgagor in reliance on the bond.

2. MORTGAGES: Priority: Mechanics' Liens. The mechanic's lien of a contractor, who is a surety on a bond to a mortgagee to hold it harmless against filing of mechanics' liens, is superior to the mortgage as to additional improvements contracted for with the permission of the mortgagee to make the building comply with building restrictions.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED.

*Hamlin & Hamlin* for appellant.

*Lee B. Ewing* for respondent.

FARRINGTON, J.—The plaintiff brought a cause of action against the defendants to enforce a mechanic's lien on property, the legal title of which was in Clarence Conrad and on which a deed of trust had been given by him to secure the payment of $1500 to the Farm & Home Savings & Loan Association of Missouri (which will be termed throughout this opinion as the Loan Association), the other respondent. Judgment went in plaintiff's favor against Clarence Conrad, the legal owner of the property, but the court held that the mortgage of the Loan Association would take priority over the mechanic's lien of the plaintiff against the property.

The petition charges that plaintiff was a contractor and that on the 23rd day of August, 1916, he made a contract with defendant Conrad to build a dwelling house on a lot in Roanoke Addition in Springfield, Missouri. That this contract was well known to the Loan Association, and was participated in by them. The consideration for building said house was $1094. It alleges that according to the contract he began the construction of the building, and after the same was in process of building both the defendants requested him to furnish additional material and labor on said building, which was accordingly done. The amount of the additions and improvements which were not contemplated by the first contract but were contemplated by the second contract amounted to $206.55. The plaintiff then alleges that the total value of the material and labor furnished upon and about the building at

the special instance and request of the defendants was $1300.55, and that defendants had paid him on said amount $772.57, leaving a balance of $527.98, the amount sought to be enforced by mechanic's lien in this action. In addition to this, plaintiff's petition also contained an account of $13.75, which was an account purchased from a sub-contractor. This account appears to drop out of consideration in the record before us and is not included in the judgment rendered against Conrad and no disposition is made of it in the judgment rendered in the Loan Association's favor.

Conrad answered, alleging that the contract had not been fully complied with, and asked damages by way of a counterclaim. Judgment went against him and there is no appeal, hence his interest in the cause will be no further discussed except as it relates to the judgment in favor of the Loan Association.

The answer of the Loan Association alleged that Conrad was the owner of a lot in Springfield and that it loaned to him on the 19th day of August, 1916, $1500, and that on said date he executed a deed of trust security the payment of same. It further alleges that this money was loaned to Conrad for the purpose of making an improvement on the lot; and that on the 22nd day of August, 1916, Conrad as principal, and Compton, plaintiff, as surety, executed and delivered to the defendant Loan Association a bond conditioned that if the Loan Association would lend to Clarence Conrad $1500, secured by mortgage on the real estate, that they, and each of them, would fully protect and indemnify the Loan Association against any and all mechanic's or materialmen's liens of every kind and character arising out of the construction of said building and improvement; and that they, and each of them would fully pay off and discharge any and all of said liens and hold this defendant harmless by reason of the same. And that it was further agreed by the terms of the obligation that any alterations or changes in the plans and specifications of the proposed

building or improvement should in no wise operate to release or discharge either Conrad or Compton. The answer further .alleges that the full sum of $1500 had been paid to Conrad, and that the conditions contained in its deed of trust had been breached, and that its mortgage is a valid and subsisting lien against the premises; and alleges that by the execution of the indemnifying bond the plaintiff waived any right he might have to establish a mechanic's or material man's lien, and alleges that if he be permitted to establish a lien prior to its mortgage it would be damaged in the sum of $800.

Plaintiff, Compton, replied admitting the signing of the bond, but avers that while the legal title to the real estate described was in the name of Conrad, yet the Loan Association was to be a part owner of said property with Conrad. That the Loan Association purchased the lot for Conrad, participated in the making of the contract between Conrad and the plaintiff, directed and superintended in all matters in regard to the construction of the building, and that the extras mentioned in plaintiff's petition were made at the special instance and request of the defendant, Loan Association. That the bond executed was to protect the Loan Association only against claim of persons for labor and material furnished and used therein, but was not to protect it against a lien to be filed by the plaintiff. That the defendant Loan Association well knew the expenditures made by the plaintiff for labor and material, and well knew that plaintiff was relying upon the Loan Association for the payments due him for labor and material.

The facts of this case are about as follows: W. G. Burton is the District Agent for the defendant, Loan Association, and resides in the city of Springfield, Missouri, where said Company does business. On August, 1916, W. G. Burton, District Agent, negotiated a sale between the owner of a lot in Roanoke Addition and Conrad, he agreeing with Conrad that his Com-

pany would purchase this lot for him, place the title
in his name and take back a $1500 mortgage on the
property to pay for the purchase price thereof and to
pay for the building of an improvement thereon. This,
in effect, was the agreement between Conrad and the
Agent of the Loan Association. The deed to the lot
was made to Conrad, and practically all, if not all,
of the purchase price was paid by Burton out of the
Loan Association funds. There is some little evidence
that the lot cost $500; it is, however, not definitely
shown that it did cost as much as $500, but in any
event, it is admitted that Burton paid $495 of the
Loan Association's money to the seller of the lot and
had the legal title in the deed conveying the same
placed in Conrad. Conrad then fell into negotiation
with the plaintiff and agreed upon the erection of a
house on said lot for the sum of $1094, and before
closing the contract Conrad and the plaintiff went to
Burton's office and Burton there told the plaintiff he
was loaning for the Loan Association $1500, whereupon
the plaintiff executed the board in question, the terms
of which agreed that if the Loan Association loaned to
Conrad $1500 on this property the plaintiff would hold
said Association harmless by reason of any mechanic's
liens that might be filed. The bond also covers not
only the proposed and agreed improvements of that
date, but provides that any alterations or changes in
the plans and specifications of the proposed building
shall in no wise operate to release or discharge the
surety or principal in the bond. The facts further
appear that this lot had been owned formerly by one
Shattuck, and that after the building had been par-
tially completed Shattuck, who had placed a building
restriction upon the Addition in which this lot was
located, requiring that a house built on this lot should
cost as much as $2000, called upon Burton and told
him that they were not complying with the building
restriction. Burton, who represented the Loan Asso-
ciation, and who at that time had advanced on this

loan to Conrad at least $495 and probably more (the evidence is not clear as to when the additional amounts put in by Burton were paid), immediately realized that a change would have to be made in the construction of this building owing to the restriction which required a $2000 house, and that the contract signed up by the plaintiff and Conrad in this case was to be a building to cost $1094. Burton went to the lot where the work was going on looking for Compton, and not finding him there he himself stopped the workmen on the building and told them to wait until some changes were made. He then went to Compton's office and left word for him to meet him. Compton came to Burton's office where Burton disclosed to him the predicament they were in, and according to Compton's testimony, stated that he, Burton, had "kind of got into it," the result being that Burton made certain suggestions to Compton as to changes that could be made that would make this house look like a $2000 proposition; and there is further substantial, and to my mind convincing testimony that there was an agreement all around between Compton, Burton acting for the Loan Association, and Conrad that additional improvements amounting to $206.55 would go into this improvement, and Burton got Shattuck's consent or approval for this building to be completed if these improvements were made. That is, Shattuck agreed that if these improvements were made he would accept them and the building as complying with the building restriction. There can be no doubt under the record but what Burton was active, and rightfully so, in bringing about an agreement for the placing of the additions in this house. Compton pleads and testifies that these improvements were placed there at the special instance and request and by agreement with Burton, and that Conrad agreed to them.

The plaintiff admitted that he had no defense against the bond except that the bond does not cover the amount of loss which plaintiff is admitted to have

suffered in this action. It may be well to add that there is no controversy in this case but what the Loan Association paid out the full $1500 which it agreed to loan Conrad, to Conrad or under an order from him. And it is also uncontroverted that the total amount that plaintiff was entitled to for the building of the house together with the additions thereto amounted to $1300.53, and that he had received only $772.57, and that there was a balance due him of $527.98.

The law we think is well settled in this State concerning the right of a contractor or sub-contractor to file a lien against the property where such contractor or sub-contractor has given a bond to the owner or to a mortgagee to protect such owner or mortgagee against mechanic's liens, and this law may be summed up tersely as follows: If it is agreed by the bond that the owner or the party to whom the bond is given shall pay a certain amount of money, and if it appears that that amount of money has been paid, then a principal or a surety on the indemnifying bond will not be permitted to enforce a mechanic's lien as against the obligee in such bond, because to allow such would be permitting the obliger to violate the very agreement which he made with the obligee in the bond. This statement is in conformity with the statement of the law as declared in the cases of Hanley v. Ward, 70 Mo. App. 146; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; Badger Lumber Co. v. Muehlebach, 100 Mo. App. 646, 83 S. W. 546.

The appellant relies for reversal of this case entirely upon the case of Ward v. Nolde, 259 Mo. 285, 168 S. W. 596. Upon reading this case, however, it is apparent that the holding there is in entire accord with the expression of the law as hereinbefore set out, and as is declared in the cases heretofore cited. In the case of Ward v. Nolde, it appears that the contractor who was a surety on the bond to the landowner, Delaney, and who was permitted to file a lien against

Delaney in spite of such bond, had never received a cent under his contract. The court expressly held that bonds, such as these, given by a contractor to indemnify the owner of land contracts only to not file a lien if he under his contract is paid by the terms of his contract for the improvement. In other words, this case holds in line with the cases above cited, that if the obligee in the bond has paid the full money that he has agreed to pay, then the bond will protect him because he paid it out in consideration of having received the bond. On the other hand, if he has not complied with his contract, and the money is yet unpaid, then the obligee is not damaged by reason of the filing of mechanic's liens, and if he is not damaged the filing and enforcing of the lien in no way harms him. The filing of the lien, not harming him, does not breach the obligor's or his surety's condition in the bond. This, we think disposes of this case so far as there being a right on the part of the plaintiff to file any lien on account of any money due him under his original contract, which was for $1094, and this because he contracted with the Loan Association that if they would loan and pay to Conrad or on his order $1500, then they would be held harmless on account of any mechanic's liens filed against that property, the evidence showing without contradiction that the full $1500 was paid by the Loan Association under the terms of the loan, and it would injure this Loan Association and damage it, and breach the condition of the bond which the plaintiff made, were they required to pay more than the $1500, which they must necessarily do if plaintiff's lien is permitted to take precedence over their mortgage.

II.   There is, however, a question in our minds as to the correctness of the trial court's finding and judgment which declares that the plaintiff is entitled to no lien whatever in this case under this evidence prior to the lien of the mortgage. There is strong evidence in the case that Burton made a new contract on behalf

of his Association with Compton for the putting in of the $206.55 additional improvements. These improvements were not contemplated in the original undertaking, and they were put on there as much for the benefit and protection of the Loan Association's interest in the lot as they were for the protection of Conrad, the legal owner, because had this improvement been stopped, the money the Loan Association had up to that time invested in the proposition would have been imperiled. There is evidence as we view this record, that there was a new contract made between Burton, Compton and Conrad for the placing of these additions on this house, and that the bond which was given to protect the Loan Association on the original contract does not cover or attempt to cover the provisions of the second contract, and this because Burton and the Loan Association were not parties to the first contract, and therefore any alterations or changes made on this building which was provided for under the bond covered only alterations and additions that were made under the original contract. We, therefore, believe that the trial court erred in holding as a matter of law that the bond executed by plaintiff estopped him from enforcing a lien against this property so far as these additions were concerned. Before the plaintiff would be prevented from filing a lien which would take precedence over the Loan Association's mortgage, a fact must be determined against the plaintiff, which fact is that the Loan Association through its agent did not make a new contract with this plaintiff to put on these additions, the consideration for making the same, of course, being to protect the loan which was imperiled by Shattuck's threat. The judgment is, therefore, reversed so far as it precludes the plaintiff from the enforcement of a lien for $206.55, the additions which were made to the property. If the trial court finds as a fact that the Loan Association through its agent did not make a contract with Compton for the building of those improvements, the judgment should

go entirely for the defendant Loan Association. If on the other hand, it is disclosed by the evidence and found by the trial court to be a fact that Burton, acting for the Loan Association, did contract with Compton to put on these additions, then plaintiff's lien should be pronounced as a superior lien to the deed of trust against the lot and improvement.

The judgment is reversed and the cause remanded. *Sturgis, P. J.,* and *Bradley, J.,* concur.